FILED

Bamba Fall
2065 West 6th Street, Suite 116-C
Los Angeles, CA 90057
Tel:    (213) 268-6134

2017 JAN 31  PM 1: 02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

BAMBA FALL,

    Plaintiff,

vs.

THE BANK OF NEW YORK MELLON,
FKA THE BANK OF NEW YORK,
AS TRUSTEES, ETC. SABLES, LLC
SPECIALIZED LOAN SERVICING, LLC,
SHELLPOINT MORTGAGE SERVICING,
LLC, DUNDI INVESTMENTS, LLC,
AND DOES 1 THROUGH 50,
INCLUSIVE,

    Defendants.

Case No. **CV17-00771-BRO(Ex)**

**VERIFIED COMPLAINT FOR:**

1. VIOLATION OF NEVADA
 FORECLOSURE MEDIATION
 PROGRAM AND
 HOMEOWNERS' BILL OF RIGHTS
2. INTENTIONAL
 MISREPRESENTATION;
3. SLANDER OF TITLE;
4. QUIET TITLE;
5. WRONGFUL FORECLOSURE;
6. TO VOID OR CANCEL
 TRUSTEE'S DEED UPON SALE;
7. NEGLIGENCE;
8. FRAUD IN THE CONCEALMENT;
9. VIOLATION OF TRUTH IN
 LENDING ACT (TILA);
10. VIOLATION OF 12 U.S.C. § 2605
 (RESPA);
11. RESCISSION;
12. FRAUD;
13. NEGLIGENT
 MISREPRESENTATION;
14. INJUNCTIVE RELIEF; AND
15. DECLARATORY RELIEF.

**DEMAND FOR JURY TRIAL**

1

**VERIFIED COMPLAINT**

COMES NOW Plaintiff BAMBA FALL (sometimes referred to

as "FALL" or "PLAINTIFF"), complaining of the Defendants, and each of them, as follows

## I

## INTRODUCTION

1.      Ther is an action based upon diversity of parties and federal question  brought by

Plaintiff for proprietary judgment, injunctive and equitable relief, and for compensatory,

general, and punitive damages. Plaintiff seeks a jury trial.

2.      Plaintiff is a resident of the County of Los Angeles, State of California.

Plaintiff's wife and children reside in their home in Clark County, State of Nevada in the real

property which is the subject of this litigation. On or about September 1, 2006, Plaintiff made a

loan of $289,362.00 with  Countrywide, F.S.B., loan originator and now held by Bank of New

York Mellon, fka The Bank Of New York, As Trustees. Etc., ("BONY")  to purchase his home

in Las Vegas, Nevada. On or about December 12, 2016,  Shellpoint  Mortgage Servicing, LLC

("Shellpoint") stated to Plaintiff and his loan modification representative, in a three-way

telephone conversation, that they had just taken over the servicing of Plaintiff's loan from

Specialized Loan Servicing, LLC ("SLS"),  and Plaintiff's loan modification application would

continue with their orgainization as servicer as of November 30, 2016,  and that no foreclosure

sale was scheduled for Plaintiff's home on December 13, 2016 or at any date by SLS or

Shellpoint. On the next  day, December 13, 2016, despite these representations, Defendant

Specialized Loan Servicing, LLC ("SLS") sold Plaintiff's home in Las Vegas, Nevada in a non-

judicial foreclosure sale to Dundi Investments, LLC ("Dundi").  On January 19, 2017, Dundi

Investments, LLC  obtained a Order For Summary Eviction with the Sheriff to evict Plaintiff, his

wife, and three (3) young children from their home in Las Vegas, Nevada in a state court action

now pending in Justice Court, Las Vegas Township, Clark County, Nevada. Plaintif has moved

to set aside the state court default judgment based on lack of notice. Plaintiff brings this action

for wrongful foreclosure, for declaratory judgment and an injunction to stay the Nevada state

court proceedings pending resolution of this diversity and federal question action.

2

**VERIFIED COMPLAINT**

as "FALL" or "PLAINTIFF"), complaining of the Defendants, and each of them, as follows

# I

## INTRODUCTION

1.     Ther is an action based upon diversity of parties and federal question brought by Plaintiff for proprietary judgment, injunctive and equitable relief, and for compensatory, general, and punitive damages. Plaintiff seeks a jury trial.

2.     Plaintiff is a resident of the County of Los Angeles, State of California. Plaintiff's wife and children reside in their home in Clark County, State of Nevada in the real property which is the subject of this litigation. On or about September 1, 2006, Plaintiff made a loan of $289,362.00 with Countrywide, F.S.B., loan originator and now held by Bank of New York Mellon, fka The Bank Of New York, As Trustees. Etc., ("BONY") to purchase his home in Las Vegas, Nevada. On or about December 12, 2016, Shellpoint Mortgage Servicing, LLC ("Shellpoint") stated to Plaintiff and his loan modification representative, in a three-way telephone conversation, that they had just taken over the servicing of Plaintiff's loan from Specialized Loan Servicing, LLC ("SLS"), and Plaintiff's loan modification application would continue with their orgionization as servicer as of November 30, 2016, and that no foreclosure sale was scheduled for Plaintiff's home on December 13, 2016 or at any date by SLS or Shellpoint. On the next day, December 13, 2016, despite these representations, Defendant Specialized Loan Servicing, LLC ("SLS") sold Plaintiff's home in Las Vegas, Nevada in a non-judicial foreclosure sale to Dundi Investments, LLC ("Dundi"). On January 19, 2017, Dundi Investments, LLC obtained a Order For Summary Eviction with the Sheriff to evict Plaintiff, his wife, and three (3) young children from their home in Las Vegas, Nevada in a state court action now pending in Justice Court, Las Vegas Township, Clark County, Nevada. Plaintif has moved to set aside the state court default judgment based on lack of notice. Plaintiff brings this action for wrongful foreclosure, for declaratory judgment and an injunction to stay the Nevada state court proceedings pending resolution of this diversity and federal question action.

2

**VERIFIED COMPLAINT**

3. Plaintiff alleges that there has been an ***illegal, fraudulent or willfully oppressive sale*** of his real property under a power of sale contained in a mortgage or deed of trust. Plaintiff alleges that, under the circumstances surrounding the ***illegal, fraudulent or willfully oppressive sale*** of his real property, Plaintiff is not required to tender before maintaining this lawsuit because there is no tender requirement as a pre-requisite for a damage claim for wrongful foreclosure.

4. Plaintiff alleges that, the non-judicial foreclosure documents recorded by Defendants are untrue and fabricated and were promulgated through counterfeit securities and/or assignments instruments which were not made available to Plaintiff, and which defrauded the United States Government, including Securities and Exchange Commission. Plaintiff discovered Defendants Fraud and misrepresentation in the year 2016 when Plaintiff went to the Clark County Recorder's Office. Thus, this complaint against the Defendants and all of them.

5. Plaintiff alleges that the non-judicial foreclosure of Plaintiff's home instituted by the above-named Defendants was wrongful and that Defendants acted "intentionally, fraudulently, deliberately and in conscious and callous disregard for the rights" of Plaintiff and in violation of the Homeowners' Bill of Rights.

6. Plaintiff further alleges that, the above-named defendants, cannot establish rightful possession and proper transfer or proper endorsement of the Promissory Note and the assignment of the Deed of Trust herein. Therefore, the foreclosing defendants do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

7. Plaintiff also alleges that the illegal foreclosure was effected while he was enrolled in a loan modification program and had submitted a complete package to SLS.

3

**VERIFIED COMPLAINT**

## THE PARTIES

8. Plaintiff, Bama Fall at all times relevant to ther action was and is a residence of the County of Los Angeles, State of California maintaing a home for his family in Clark County, Nevada which is the subject of ther complaint.

8.    Defendant Bank of New York Mellon, ("BONY") at all times relevant to this action is a national banking association organized under the laws of the State of New York, with its principal place of business in the State of New York, and doing business in the County of Clark, State of Nevada. BONY was the holder of Plaintiff's loan during the foreclosure process.

9.    Defendant Specialized Loan Servicing. LLC, ("SLS") at all times relevant to this action, was and is limited liability company organized under the laws of the State of Delaware, with its principal place of business in Highland Ranch, Colorado. SLS was the servicer of Plaintiff's loan and the foreclosing creditor.

10.    Defendant Shellpoint Mortgage Servicing, LLC, ("Shellpoint") at all times relevant to this action, was and is a business organization form unknown, with its principal place of business in Greenville, South Carolina. Shellpoint was the last servicer on Plaintiff's loan.

11.    Defendant Dundi Investments, LLC, ("Dundi") at all times relevant to ther action, was and is a business organization form unknown, with its principal place of business in Las Vegas, Nevada. Dundi purchased the Property at the foreclosure sale for less than half of Plaintiff's debt and below market value.

12.    Defendant Sables, LLC ("Sables") at all times relevant to ther action, was as is a limited liability company organized under the laws of the State of Nevada. Sables is the successor and foreclosing trustee.

14. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 50, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the

4

**VERIFIED COMPLAINT**

injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

13.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## VENUE AND JURISDICTION

14.    Ther Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1441(a), 1332 because the citizenship of the parties is entirely diverse, in addition the court has federal question jurisdiction under 28 U.S.C. § 1337 over the claims arising under 12 U.S.C. § 2605 and the amount in controversy exceeds $75,000.00.

## FACTUAL ALLEGATIONS

## THE PROPERTY

15.    The subject of this action is that certain real estate, situated in the County of Clark, State of Nevada, commonly known as 11852 Galvani Street, Las Vegas, Nevada 89123 (herereinafter "Property"). The Property is legally described as follows:

Lot 185 of Terracina Phase 1, as shown by map thereof on file in Book 103 of Plats, Page 76, in the Office of the county Recorder of Clark County, Nevada.

16.    At all times herein, Plaintiff is the legal recorded owner of the Property by virtue of a Grant Deed recorded on September 6, 2006 with the Clark County Recorder. A true and correct copy of the Grant, Bargain, Sale Deed is attached hereto as Exhibit A.

## THE LOAN AND DEED OF TRUST

17.    On or about September 1, 2006, Plaintiff obtained a loan with Countrywide Bank F.S.B., predecessor to BONY in the total amount of $289,362.00 ("Loan"). In order to secure the Loan, Plaintiff executed a deed of trust as the Trustor; Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Countrywide, was identified as the Beneficiary; and Recontrust Company, N.A., was identified as the Trustee. A true and correct copy of the deed of

5

**VERIFIED COMPLAINT**

trust recorded September 6, 2006 as instrument no. 0003946 in book 20060909 of Official Records in the Office of the County Recorder of Clark County, Nevada, is attached hereto and made a part hereof as Exhibit B.

18.    On or about July 3, 2014, Sables, LLC was substituted as trustee in place of Recontrust Company, N.A., and recorded the Office of the county Recorder of Clark County, Nevada. A true and correct copy of the Substitution of Trustee is attached hereto as Exhibit C.

19.    On or about December 29, 2015, Notice of Breach and Default and of Election To Sell The Real Property under Deed of Trust ("NOD") was  recorded in the Office of the County Recorder of Clark County, Nevada, and a true and correct copy is attached hereto as Exhibit D.

20.    The Affidavit of Authority attached to the NOD states that The Bank of New York Mellon FKA the Bank of New York , as Trustee for the certificateholders of the CWABS, Inc., ASSET BACKED CERTIFICATES, SERIES 2006-17 is the current holder of the Note and current Beneficiary of the obligation or debt  secured by the Deed of Trust.

21.    On November  21, 2016, a Notice of Trustee's Sale  ("NOTS")was  recorded in the Office of the County Recorder of Clark County, Nevada, and a true and correct copy is attached hereto as Exhibit E.

22.    On December 30, 2016, a  of Trustee's Deed Upon Sale  ("TDS") was  recorded in the Office of the County Recorder of Clark County, Nevada, and a true and correct copy is attached hereto as Exhibit F.

## LOAN MODIFICATION EFFORTS

23.    Defendant BONY has agreed to participate in the "Home Affordable Modification Program"("HAMP"), which is a federalprogram introduced by the U.S. Department of the Treasury to assist – at risk homeowners restructure their mortgages to avoid foreclosure.  See home Affordable Modification Program, Supplemental Directive 09-01, April 6, 2009, at: https://www.hmpadmin.com?portal/docs/hamp servicer/sd0901.pdf. Plaintiff was told by SLS'S representatives, that he was eligible for a loan modification.  On or about

6

**VERIFIED COMPLAINT**

August 16, 2016, Plaintiff's loan modification representative faxed a complete loan modiciaton application to SLS. On or about August 22, 2016, SLS sent a letter to Plaintiff acknowling receipt of documents requested for the morrtgage assistance application. A foreclosure sale on the Property was continued several times until December 13, 2016.

24.    On or about December 12, 2016,  Shellpoint  Mortgage Servicing, LLC's (Shellpoint") representatives stated to Plaintiff and his loan modification representative, in a three-way telephone conversation, that they had just taken over the servicing of Plaintiff's loan, and the loan modification application would continue with their orgainization as servicer as of November 30, 2016,  and that no foreclosure sale was scheduled for Plaintiff's home on December 13, 2016 or at any date by SLS or Shellpoint.  Plaintiff has never received written notification of the transfer of servicing on his loan as required by the Real Estate Settlement Procedures Act (RESPA).

25.    On the next  day, December 13, 2016, despite these representations, Defendant Specialized Loan Servicing, LLC ("SLS") by Sables, as trustee, sold Plaintiff's home in Las Vegas, Nevada in a non-judicial foreclosure sale to Dundi Investments, LLC ("Dundi") for $233,100.00 which was  below the value of the Property.

## THE LAS VEGAS, NEVADA EVICTION ACTION

26.    On or about January 6,  2017, Dundi Investments, LLC filed an unlawful detainer action against Bamba Fall in the Justice Court Las Vegas Township, Clark County, State of Nevada, case no. 17E000625.  Plaintiff was never served with a notice of the action or process.

27.    On or about January 13, 2017, Hon. David Brown, Hearing Master issued an Order For Summary Eviction ("Eviction Order")against Plaintiff and occupants authorizing the Constable/Sheriff to enter, the Property using all necessary force as may be required, and to summarily remove the Plaintiff/Tenant from the Property and awarding Landlord/ Dundi Investments, LLC the right of possession of the premises. A true and correct copy of the Order For Summary Eviction is attached hereto and made a part hereof as Exhibit G. The Sheriff notice on the Eviction Order stated that the eviction would take place on January 19, 2017.

7

**VERIFIED COMPLAINT**

28.    On or about January 13, 2017, the Order For Summary Eviction was posted on the door of the Property.  Plaintiff's wife immediately texted Plaintiff a copy of the Eviction Order and he immediately drove directly to the Justice Court in Las Vegas, Nevada were he filed, in pro per, a Motion to Vacate Default based on lack of notice and void trust deed transferring the Property to Dundi on the grounds of wrongful foreclosure "Motion".

29.    On or about January 26, 2017 a hearing was held in the Justice Court, Las Vegas, Neveda and the court ruled that Dundi's legal process was illegal for a foreclosed Defendant and the default order was vacated.  Dundi's respresentatives have threatened to immediately refile the unlawful detainer if Plaintiff and his family does not immediately vacate the Property.

30.    Plaintiff alleges that he is not required to make a valid and viable tender of payment of his debtedness to BONY in order to prosecute this action for wrongful foreclosure because there is noting in the language of the Homeowners' Bill Of Rights that suggests that a borower must tender the loan balance berefore filing suits based on violation of the requirements of the Homeowners' Bill of Rights..

## FIRST CAUSE OF ACTION

### VIOLATION OF NEVADA FORECLOSURE PROGRAM AND HOME OWNERS' BILL OF RIGHTS
#### (Against All Defendants )

31.    Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

32.    Plaintiff is informed and believes and on that basis alleges, that a valid foreclosure by the private policy of sale requires strict compliance with the requirements of the Nevada Foreclosure Mediation Program and the Homeowners' Bill of Rights statutes (NRS 107.086, NRS 107.040 et seq and 107.050 et seq., respectively) which were enacted to address the foreclosure crisis, keep Nevada citizens in their homes where possible, and to provide opportunities for homeowners and lenders to discuss modification alternatives and avoid

8

**VERIFIED COMPLAINT**

foreclosure.[1]

33.    Defendants had no authority to exercise a power of sale as they failed to comply with NRS 107.086(2)(a)(3) because no notice provided by the Mediation Administrator indicating that the Plaintiff will be enrolled to participate in mediation was included in the NOD (Exhibit D).    As such, the sale of the Property is void and no title could be transferred to Defendant Dundi.    Defendants had no power to sell the property in a non-judicial sale when the loan modification application was being reviewed and no denial had been given to Plaintiff, all in violation of the Home Owners' Bill of Rights. Defendants conduct was "dual tracking" which is prohibited. The Trustee's Deed upon Sale herein is therefore void.

## SECOND CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION
### (Against Defendant Shellpoint)

36.    Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

37.    Defendant Shellpoint made representations to Plaintiff, in the course of its business and in a transaction in which it had a pecuniary interest.    These misrepresentations were intentional or in the alternative, negligent.

38.    On or about December 12, 2016, Shellpoint's representatives told Plaintiff and his modification representative on  a three (3) way telephone conversation that they had taken over the servicing of Plaintiff's loan and they woulld continue to review the loan modification application.  Upon inquiry from Plaintiff, Shellpont's representative told Plaintiff and his loan modification representative that no sale was scheduled on Plaintiff's Property for December 13, 2016 or at any date.  Despite these assurances, Plaintiff's home was sold in a non-judicial

---

[1] California Homeowners' Bill of Rights a smilar law to protect the homeowner became law on January 1, 2013.

9

**VERIFIED COMPLAINT**

foreclosure sale on December 13, 2016. As such Defendant Sellpoint supplied false information to Plaintiff to his detriment.

39. Defendant Shellpoint did not exercise reasonable care or competence in obtaining or communicating the information.

40. Plaintiff justiably relied on the information, expecting that Defendant Shellpoint would continue a meaininful review of his loan modification package. Defendant Shellpoint's misrepresentations proximately caused Plaintiff to lose his home in the foreclosure sale.

41. Intentional misconduct- Defendant Shellpoint had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Plaintiff would result and, despite that knowledge, intentionally pursued the course of conduct, resulting in injury or damage.

42. Defendant Shellpoint deliberately and intentionally injured the Plaintiff by lulling him to believe that his loan mofication aplication would proceed with them as previously with SLS and his home was safe from foreclosure while knowing the sale would take place on the next day. Defendant Shellpoint's representations were false, fraudulent, deceptive, and inaccurate and which were made recklessly and with total disregard for the truth or validity thereof. Defendant Shellpoint repeatedly misrepresentated and misstated that the loan modification review would proceed with their organization as servicer on Plaintiff's loan and no sale would take place however dispite these assurances, on December 13, 2016, the Property was sold to Dundi in a non-judical sale.

**THIRD CAUSE OF ACTION**
**SLANDER OF TITLE**
**(Against All Defendants)**

10

**VERIFIED COMPLAINT**

43.     Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

44. Defendants, and each of them, disparaged Plaintiffs exclusive valid title by and through the preparing, posting, publishing, and recording of forged and fraudulent real estate documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed Upon Sale etc.

45. Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiffs legal title to the Property. By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiffs legal title was made to the public at large.

46. As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

47. As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiffs title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of

11

**VERIFIED COMPLAINT**

sleep and other injuries to her and her health and well-being, and continues to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

48. At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and to deprive Plaintiff of his exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Defendants' conduct forced the Plaintiff into Bankruptcy with its long lasting detrimental effects on his reputation. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

### FOURTH CAUSE OF ACTION
### QUIET TITLE
**(Against All Defendants)**

49. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Plaintiff is the owner in fee of the real property herein. Plaintiff is informed and believes and on that basis thereon alleges, that one or more Defendants claim an interest adverse to Plaintiff's title in the Property. These claims are without any right and Defendants have no right, title, stake, lien or other interest in the Property. Defendants, and each of them, acted in concert to disparage Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of forged and fraudulent real estate documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed.

12

**VERIFIED COMPLAINT**

51. Plaintiff names as Defendants in ther action, all persons and parties unknown, claiming :

(a) any legal or equitable right, title, estate, lien, or inteerest in the Property described in the complaint adverse to Plaintiff's title, or

(b) any cloud on Plaintiff's title to the Property.

52. Plaintiff is seeking to quiet title against the claims of the following Defendants:

(a) Any and all claims by Defendants BONY, DUNDI, SHELLPOINT, and SLS, who claim some right, title, estate, lien or interest in and to the lands of Plaintiff as described in this Complaint, based on the unauthorized and void Trustee's Deed of Sale recorded in relation to the Property; and

(b) Any of the claims of all unknown persons described herein, whether or not the claim or cloud is known to Plaintiff.

53. The Defendants' claims are without any right whatever and those Defendants have no right, title, estate, lien or interest whatever in the above-described Property, or any part of that Property.

54. Plaintiff seeks to quiet title as of December13, 2016 when Sables, as foreclosing trustee, sold the Property to DUNDI at public auction on behalf of BONY, as beneficiary.

### FIFTH CAUSE OF ACTION

### WRONGFUL FORECLOSURE

### (Against All Defendants)

55. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

56. On July 2, 2015, Defendant SLS, as agent, for BONY, Beneficiary executed a Notice of Breach Default and Election to Cause Sale which was recorded by in the official

**VERIFIED COMPLAINT**

records of the Clark County Recorder (Exhibit D). There however was no recorded assignment of beneficial interest from Countrywide Home Loan to BONY to provide notice as to why these entities have authority to record said notice against Plaintiff's property.

57. There is no assignments of record replacing the original beneficiary to authorize such actions by the Defendants BONY, SLS and Sables. They are therefore strangers to the transaction and not authorized to take the actions they have taken and have placed a cloud on the title of Plaintiff. The parties do not have authority to act under NRS 107.090 et. seq.

58. Plaintiff alleges that there has been unlawful, fraudulent and willful oppressive sale of his real property and that Defendants and each of them are liable to Plaintiff for damages. So, that **TENDER IS NOT REQUIRED.**

59. Plaintiff alleges that under the circumstance where there has been illegal, fraudulent or willful oppressive sale of real property by the foreclosing Defendants, Plaintiff is not required to tender the entire debt before filing this wrongful foreclosure lawsuit.

60. Plaintiff is informed and believes and thereon alleges that after the origination and funding of her loan, it was sold to investors as a "mortgage backed security" and that none of the Foreclosing Defendants in this action owned their loan, or the corresponding note. Moreover, none of the Foreclosing Defendants in this action were lawfully appointed as trustee or had the original note assigned to them – no valid assignment exists against this parcel number. Accordingly, none of the Foreclosing Defendants in this action had the right to collect mortgage, declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiff's interest in the Property. The Foreclosing Defendants were not the note holder or a beneficiary at any time regarding Plaintiff's loan.

14

**VERIFIED COMPLAINT**

61. Plaintiff further alleges on information and belief that none of the Foreclosing Defendants in this action are beneficiaries or representatives of the beneficiary and, if the Foreclosing Defendants allege otherwise, they do not have the original note to prove that they are in fact the party authorized to conduct the foreclosure.

62. Plaintiff further alleges that the loan was sold or transferred without notifying the Plaintiff in writing. Therefore, the loan is void of legal rights to enforce it.

63. Additionally, Plaintiff was fraudulently enrolled in the Loan Modification Program without their having a right to do so yet they perpetrated the foreclosure and sale to Dundi during the loan modification.

64. Plaintiff further alleges that, the Foreclosing Defendants even filed the forged Certificate on their behalf that Plaintiff was not interested in mediation without ever contacting the Plaintiff to discuss knowing he was in loan modification.

65. Thus, the Foreclosing Defendants engaged in a fraudulent foreclosure of the Property in that the Foreclosing Defendants did not have the legal authority to foreclose on the Property and, alternatively, if they had the legal authority, they failed to comply with non-judicial foreclosure laws in the state of Nevada.

66. Plaintiff alleges that, trustee or mortgagee maybe liable to the trustor or mortgagor for damages sustained where, as here, there has been an illegal, fraudulent or willfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust.

67. Plaintiff alleges that, tender is not required in that Plaintiff is also challenging the validity of the underlying debt. Plaintiff alleges that underlying debt's validity and the exercise of the acceleration of debt by Defendants was premature and not authorized under the terms and conditions of the deed of trust.

15

VERIFIED COMPLAINT

68. Plaintiff alleges that Defendants, and each of them, do not have the right to foreclose on his real Property because Defendants, and each of them, have failed to perfect any security interest in the Property, and cannot prove to the court they have a valid interest. Thus, Defendants do not have standing or legal authority to effectuate the foreclosure and sale of Plaintiff's real property.

69. Plaintiff alleges that Defendants, and each one of them were the agents, employees, alter egos, servants and/or the joint-venturers of the remaining Defendants, and each of them are liable for unlawfully instituting the SUBSTITUTION OF TRUSTEE, NOTICE OF DEFAULT AND ELECTION TO SELL, NOTICE OF TRUSTEE SALE and the TRUSTEE'S DEED UPON SALE of Plaintiff's real property in violation of both Truth in Lending Act (TILA) and Real Estate Procedure Act (RESPA).

70. The above Defendants lack standing to cause the non-judicial foreclosure of Plaintiff's real property; therefore, the wrongful and unlawful non-judicial foreclosure of Plaintiff's real property instituted the above-named Defendants is NULL and VOID.

71. At all times relevant herein, and each one of them were acting as purported agent and in conspiracy for each other to cause the WRONGFUL FORECLOSURE of Plaintiff's real property.

72. Plaintiff alleges that there has been an *Illegal, fraudulent or willfully oppressive sale* of his real property under a power of sale contained in a mortgage or deed of trust and that Defendants and each one of them is liable to Plaintiff for damages.

73. Plaintiff is informed and believes and thereon alleges that the non-judicial foreclosure documents recorded by Defendants are untrue and fabricated and were promulgated

**VERIFIED COMPLAINT**

through counterfeit securities and/or assignments instruments which were not made available to Plaintiff.

74. Plaintiff alleges that the non-judicial foreclosure of Plaintiff's real property instituted by the above Defendants was wrongful and that Defendants acted "intentionally, fraudulently and in conscious and callous disregard for the rights" of Plaintiff.

75. None of the Defendants assessed Plaintiff's financial situation correctly or in good faith prior to filing the Notices of Default against the Property in their action.

76. Accordingly, the Defendants did not fulfill their legal obligation to Plaintiff prior to filing of the Notice of Default and, therefore, any acts based on the Notice of Default taken thereafter were invalid and void.

77. Plaintiff is informed and believes and thereon alleges that at all times pertinent, Defendants were not authorized by contract or law to proceed with the non-judicial foreclosure of Plaintiff's real property which Plaintiff has owned for many years.

78. The assignments by Defendants were fraudulent and wrongful and the deed of trust was not perfected. Therefore, the assignment of the deed of trust has not been perfected.

79. Consequently, Defendants engaged in a fraudulent and wrongful foreclosure of the Property in that Defendants did not have the legal authority to foreclose on the Property and, alternatively, if they had the legal authority, they failed to comply with The Truth in Lending Act (TILA) 15 U.S.C. §§ 1601 et seq., and the Real Estate Settlement Procedures Act -("RESPA"), 12 U.S.C. §§ 2601 et. seq. including other State and Federal real estate laws.

80. Plaintiff also seeks the expenses of legal proceedings, including attorney's fees necessary to rescind and void Defendants fraudulent foreclosure of Plaintiff's real property.

17

**VERIFIED COMPLAINT**

81. Each Defendant in this case lacked the authority to foreclose on Plaintiff's property and the trustee sale of Plaintiff's home was null and void.

82. Plaintiff contends that the lender(s) or individual or entity lacked the authority to foreclose, therefore, the trustee's sale was a complete nullity with no force or effect hence, the trustee sale must be set aside.

83. Additionally, Defendants in the instant case failed to comply with the notice requirements before instituting the trustee sale of Plaintiff's real property. Further, Courts have held that Notice Defect Voids Trustee Sale so tender would not be required.

84. Foreclosure is also illegal when loan modification is in progress. Thus, foreclosure sale and all following transfers, sales and assignments are NULL AND VOID.

85. As a result of the above alleged wrongs, Plaintiff has suffered general and special damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## TO VOID OR CANCEL TRUSTEE'S DEED UPON SALE
### (Against All Defendants)

86. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87. Plaintiff alleges that the Trustee's Sale must be cancelled and/or set aside because the Foreclosing Defendants failed to acknowledge that no valid assignment existed and refused, and/or neglected to consider the ongoing loan modification and proceeded to sell the Property under a materially defective Notice of Trustee's Sale.

88. The Foreclosing Defendants fraudulently claimed themselves as Creditors in Plaintiff's Bankruptcy filed on May 10, 2016 in the United States Bankruptcy Court, Central District of California, case no. 16-16168-BB.

18

**VERIFIED COMPLAINT**

89. The Foreclosing Defendants never had the legal authority to foreclose, and filed forged documents with false statements in Bankruptcy Court to obtain relief from stay stating they did not have the originals at the time.

90. The Foreclosing Defendants never had the legal authority to foreclose, i.e., the authority to exercise the power of sale as an assignee of the Note and Deed of Trust, because the Foreclosing Defendants' interest was never acknowledged and recorded in violation of Nevada and Federal laws, resulting in the non-judicial foreclosure sale being void.

91. The purported sale of the Property by Defendants was improperly held and the trustee's deed was wrongfully made and executed in that, without limitation, the foreclosing Defendants and their predecessors in interest failed, refused, and neglected to contact Plaintiff in person or by telephone to discuss option of avoiding foreclosure.

92. Plaintiff further alleges that the purported sale of his real property was unlawful, hence void and must be cancelled; and that the foreclosing Defendants, refused, and neglected to explore alternatives to foreclosure with Plaintiff prior to recording the NOTS, and subsequently failed and/or refused to consider Plaintiff for any loan modification or default resolution program.

93. Plaintiff is excused from any offer to tender to the Foreclosing Defendants, all amounts due and/ or owing because of Defendants, ***illegal, fraudulent and willful oppressive sale*** of Plaintiff's home.

94. Plaintiff is attempting to set aside this trustee's sale on grounds other than irregularities in the sale notice or procedure and on the grounds of illegal and oppressive sale of the Property.

19

**VERIFIED COMPLAINT**

95. Moreover, the Foreclosing Defendants never had the legal authority to foreclose because the instrument (Deed of Trust), which permitted foreclosure if the borrower was in default, is void as it was improperly assigned and/or transferred to the Foreclosing Defendants from the original lender. Therefore, the Deed of Trust could not provide a basis for a foreclosure, and the non-judicial foreclosure is void ab initio.

96. Accordingly, Plaintiff hereby requests an order of this Court that the Trustee's Sale was irregular in that it was legally void and conducted without any right or privilege by the Foreclosing Defendants.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE
### (Against All Defendants)

97. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98. Plaintiff alleges that, all Defendants and each of them ("the foreclosing Defendants") are liable to Plaintiff for Negligence as they had no legal standing to become "foreclosing party".

99. Plaintiff is informed and believes and thereon alleges that the foreclosing Defendants and each of them, owed a duty of care to ensure they do not defraud Plaintiff.

100. As a further, duty owed by the foreclosing Defendants to Plaintiff, Plaintiff is informed and believes and thereon alleges that the foreclosing Defendants and each of them, owed a duty not to conduct an illegal, fraudulent and oppressive sale of the Property.

101. Additionally, Plaintiff is informed and believes that the foreclosing Defendants and each of them, owe Plaintiff the duty to comply with Nevada non-judicial foreclosure laws.

102. As a further breach of duty to Plaintiff; Plaintiff is informed and believes and thereon alleges that, the foreclosing Defendants and each of them, breached its duty to Plaintiff when

20

**VERIFIED COMPLAINT**

they maliciously and fraudulently, promulgating counterfeit securities and fraudulent assignment instrument and thereby causing Plaintiff's home that he owned for many years to go into foreclosure.

103. Plaintiff is informed and believe, and on the basis of that information and belief alleges, that had Defendants used proper skill and care in the handling of Plaintiff's matter, Plaintiff would have not been subject to ridicule, emotional distress, and injury to reputation or forced into Bankruptcy.

104. Plaintiff alleges that as a direct and proximate cause and result of Defendants' fraud, promulgating of counterfeit securities and fraudulent assignment instrument, has caused substantial damage to Plaintiff's reputation, loss of personal and business income and his good name is in excess of $3,000,000.00

## EIGHTH CAUSE OF ACTION
## FRAUD IN THE CONCEALMENT
### (Against all Defendants)

105. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Defendants, and each one of them are sophisticated real estate con-artists that have perfected the art of stealing quiet title properties, acting in concert and in conspiracy, with each other concealing the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, Defendants concealed the fact that Borrower's loan changed in character because no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income

21

VERIFIED COMPLAINT

stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendants but not disclosed.

107. Defendants knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loan agreement.

108. Defendants intended to induce Plaintiff based on these misrepresentations and improper disclosures.

109. Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff would have been alerted to issues of concern.

110. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiff would have known that the actions of Defendants collectively and individually, would have an adverse effect on the value of Plaintiff's real property.

111. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, Defendant and each of them were engaged in unlawful scheme the purpose of which was to execute unconscionable mortgage loans secured by real property in order to make commissions, kick-backs, undisclosed yield premiums, promised Plaintiff that Plaintiff is entitled to loan modification and subsequently did not act on said offer of loan modification.

112. Plaintiff alleges that Defendants, and each of them, had a duty to disclose the true costs of the mortgage loan which was made to Plaintiff and the fact that Plaintiff could not afford the loan.

113. Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the Loan and accept the Services as alleged herein.

22

**VERIFIED COMPLAINT**

114. Defendants were aware of the misrepresentations and profited from them.

115. As a direct and proximate result of the misrepresentations and concealment Plaintiff has been damaged in an amount to be proven at trial, including but not limited to, costs of Loan, damage to Plaintiff's financial security, and emotional distress.

116. Plaintiff alleges that Defendants are liable for malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights of Plaintiffs in that Defendants' actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

**NINTH CAUSE OF ACTION**
**FOR VIOLATION OF TRUTH IN LENDING ACT (TILA) 15 U.S.C §§ 1691, 1692**
**(Against All Defendants)**

117. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

118. At all times relevant herein, Defendants, and each one of them were acting as purported agent and in conspiracy for each other to cause the WRONGFUL FORECLOSURE of Plaintiff's real property.

119. At all times relevant herein, and each one of them were acting as purported agent and in conspiracy for/with each other in this cause.

120. Defendants attempted to collect Plaintiff's debt obligation and thus are debt collectors pursuant to the Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

23

**VERIFIED COMPLAINT**

due another." 15 U.S.C. § 1692a (6). Defendants falsified the debt and collected on it with some of them not even having Nevada license to do so.

121. Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt... [including] the false representation of... the character, amount, or legal status of any debt... or [t]he threat to take any action that cannot legally be taken...." 15 U.S.C. § 1692e(2)(A), (5).

122. Defendants attempted to collect on the Note under false pretenses, namely that Defendants were assigned Plaintiffs debt when in fact they were not.

123. Plaintiff alleges that, SLS and Shellpoint acting as Plaintiffs mortgage servicers, had been acting in a manner to mislead Plaintiff into believing that Defendants had the authority to demand payments from him.

124. Plaintiff alleges that, Defendants SLS and Shellpoint acting as Plaintiff's mortgage servicers, threatened to take action, namely engaging in collection activities that cannot legally be taken by them.

125. As alleged herein, Plaintiff's Note was not properly transferred so that no valid Assignment of DOT exists, yet Defendants sought to cause their purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

126. On information and belief, Defendants did not have a perfected security interest in Plaintiffs Note such that they can enforce Plaintiff's obligation and/or collect mortgage payments.

127. Plaintiff alleges that, Defendants falsely represented the status of Plaintiff's debt and Defendants' ability to enforce Plaintiffs debt obligation, in which they have no pecuniary, equitable, or legal interest.

**VERIFIED COMPLAINT**

128. The conduct described above by Defendants was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage. However, despite such knowledge, Defendants continued to demand and collect Plaintiff 's mortgage payments.

129. On information and belief, Defendants engaged and is engaging in a pattern and practice of defrauding Plaintiff, in that during the entire life of the mortgage Loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debit fees.

130. On information and belief, at all times material Defendants had, and have, actual knowledge that Plaintiff s account was not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate account. Plaintiff made payments based on these improper, inaccurate, and fraudulent representations.

131. The foregoing acts and omissions of Defendants and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, the above-cited provisions of the FDCPA, 15 *U.S.C.* § 1692 et seq., with respect to Plaintiff.

132. Plaintiff could not have reasonably known of the existence of a claim for violation of 15 *U.S.C.* § 1692(e) because Defendants fraudulently concealed the fact that they were not entitled to enforce Plaintiffs debt obligation and that they were falsely representing to Plaintiff that the character and amount of money Plaintiff still owed on his debt.

133. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 *U.S.C.* § 1692k (a) (1); statutory damages in an amount up to $1,000.00 pursuant to 15 *U.S.C.* § 1692k (a) (2) (A); reasonable attorneys' fees and costs pursuant to 15 *U.S.C.* § 1692k (a) (3); and declaratory relief, from each Defendant herein.

25

**VERIFIED COMPLAINT**

134. Plaintiff relied on Defendants misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce her debt obligation against him; (2) the title to his home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiff's home or get title insurance; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party (5) he was forced to file Bankruptcy Chapter 7 and his credit and credit score have been damaged; (6) is facing eviction; and (7) he has expended significant funds to cover the cost of attorneys' fees and related costs.

135. Plaintiff's ninth cause of action has alleged sufficient facts under cognizable legal theory upon which Defendants are liable to Plaintiff for violation of TRUTH IN LENDING ACT (TILA) specifically, 15 U.S.C §§ 1691, 1692.

**TENTH CAUSE OF ACTION**
**FOR VIOLATION OF 12 U.S.C. § 2605 (RESPA)**
**Against All Defendants**

136. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

137. At all times relevant herein, Defendants and each one of them were acting as purported agent and in conspiracy for/with each other in their cause.

138. Plaintiff's loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, Regulation X, and the Dodd-Frank Act.

26

**VERIFIED COMPLAINT**

139. Plaintiff sent a Qualified Written Request ("QWR") to Defendants. On information and belief, Defendants received the QWR and he was enrolled in Loan Modification at the time of foreclosure.

140. The QWR contained information to enable Defendants to identify Plaintiff's Loan including the borrower's name, loan number, and property address. Also, the QWR contained requests for information of the loan, specifically the identity and contact information of the creditor of Plaintiffs Note, a complete loan history, accumulated late fees and charges, and requested information to verify the validity of the purported debt owed to Note Holder.

141. Defendants, failed to acknowledge the receipt of Plaintiffs QWR within five (5) day of receipt, as required by section 1463(c) of the Dodd-Frank Act. Moreover, Defendants failed to provide a substantive response to Plaintiffs QWR within thirty (30) business days of receipt, as required by the Dodd-Frank Act.

142. Because the Loan is subject to RESPA, the Dodd-Frank Act, and Regulation X, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

143. Defendants violated Section 6 of Regulation X upon receipt of Plaintiff QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmitting to the borrower a written notification of the correction; and (b) failure to protect Plaintiffs credit rating upon receipt of Plaintiffs QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in section 603 of the Fair Credit Reporting Act, 15 *U.S.C.* § 1681(a) and failing to notify Plaintiff in writing when the servicers were replaced, notably in the replacement of SLS by Shellpoint allegedly prior to the non-judicial sale.

27

**VERIFIED COMPLAINT**

144. Plaintiff alleges that all Defendants collectively violated 12 *U.S.C.* § 2605 and are subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damages. See 12 *U.S.C.* § 2605.

145. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs Loan, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs associated with removing the cloud on his Property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial.

146. As a direct and proximate result of the violations of RESPA, Dodd-Frank Act, and Regulation X by Defendants, Plaintiff has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

147. As a result of Defendants' violations of 12 *U.S.C.* § 2605, RESPA, the Dodd-Frank Act, and Regulation X, Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to his home has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiffs home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs home or get title insurance; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party (5) he was forced to file Bankruptcy (Chapter 7), his credit and credit score have been damaged; and (8) he has expended significant funds to cover the cost of attorneys' fees and related costs.

**VERIFIED COMPLAINT**

148. Plaintiff requests a decree permanently enjoining Defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiff's title to the property which was secured by the Deed of Trust and legally described above in this complaint.

149. Plaintiffs respectfully request the court to award Plaintiffs costs of this action, and such other relief as the court may deem proper.

### ELEVENTH CAUSE OF ACTION
### RECISSION
### (Against Defendant BONY)

150. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

151. Plaintiff is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: (1) Violation of Nevada Real Estate Foreclosure laws; (2) Failure to provide a Mortgage Loan Origination Agreement; (3) Fraudulent Concealment; (4) Fraudulent Inducement; (5) failure to abide by the PSA; (6) making illegal or fraudulent transfers of the note and deed of trust; and (5) Public Policy Grounds, each of which provides independent grounds for relief.

152 The Truth In Lending Act, 15 U.S.C § 1601, et. seq., extends Plaintiff's right to rescind a loan if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. Here, Defendants have failed to properly disclose the details of the loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan he could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

29

**VERIFIED COMPLAINT**

153. The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

154. As a proximate result of Defendants' actions, Plaintiff has incurred damages in excess of $6,000,000.00

155. WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

## THIRTEENTH CAUSE OF ACTION
### FRAUD
### (Against Defendants)

156. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

157. Defendants intentionally, willfully, and wantonly engaged in the acts described hereinabove with the purpose of deceiving Plaintiff by falsely stating that the Property would not be sold on December 13, 2016, yet the Property was sold on that date.

158. On December 12, 2016, Defendant Shellpoint intentionally misled Plaintiff that the loan modification review would proceed when in fact Defendants had no intention to do so. Defendants engaged in the unlawful suppression of facts of circumstances for self-serving purposes in financial gain.

159. Plaintiff justifiably relied on Defendants' deception, which was the actual and proximate cause of Plaintiff's damages.

160. As an actual and proximate result of the actions of Defendants, Plaintiff suffered damages in an amount subject to proof at the time of trial. As a further proximate result of Defendants' actions, Plaintiff is entitled to treble damages on all damages.

161. Further, Defendants' actions have been willful, knowing, and malicious, entitling Plaintiff to punitive and exemplary damages within the Court's discretion.

162. Defendants' actions in these matters have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive and exemplary damages in an amount appropriate to punish Defendants, and each of them, and to deter others from engaging in the

30

**VERIFIED COMPLAINT**

same behavior.

## THIRTEENTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
#### (Against Defendants Shellpoint, SLS, Sables and BONY)

163.   Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

164.   Defendant Shellpoint, negligently misled Plaintiff by falsely assuring Plaintiff on December 12, 2016, that no foreclosure sale of the Property would go forward on December 13, 2016 while the loan modification was in progress, but Defendant Sables held the sale on December 13, 2016 with a subsequent recording of a Trustee's Deed of Sale allegedly transferring the Property to Dundi.

165.   As a result of the foregoing, Plaintiff has lost title to his home where his wife and three minor children reside. Plaintiff's reliance on the negligent misrepresentations of Defendants was a substantial factor in causing Plaintiff serious injury. Plaintiff justifiably relied on Shellpoint's representative's representation that the foreclosure sale would not take place on December 13, 2016 and the loan modification would go forward with them as successive servicer to SLS.

166.   The actions of Defendants, and each of them, were willful, intentional, and done with intent to defraud Plaintiff, thereby justifying an award of punitive damages in an amount within the Court's discretion.  In doing the acts complained of hereinabove, Defendants acted in concert together and did purposely and willfully in planning, devising, and bringing about the foreclosure sale of Plaintiff's home. Plaintiff is entitled to actual and puntitive damges as Defendants' conduct showed a conscious disregard to Plaintiff and her family.

## FOURTEENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
#### (Against all Defendants)

167. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**VERIFIED COMPLAINT**

168. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding the Note and Trust Deed.

169. Plaintiff contends that pursuant to the mortgage loans and the Deed of Trust, Defendants do not have authority to foreclose upon and/or sell Plaintiff's real property described above.

170. Plaintiff alleges that in addition to violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, Defendants, and each one of them, knowingly concealed their lack of an enforceable security interests in plaintiff's real properties by fabricating and recording false documents in the Clark County Recorder's Office.

171. Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of *Nevada and federal laws.* Through this action, Plaintiff seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected security interest in the Note and Deed of Trust (collectively referred to as "Loan").

172. Plaintiff is informed and believes, and based thereon alleges that Defendant Dundi, Does1 to 20, and each of them ("Defendants") have commenced an unlawful detainer action to take possession of the Property and evict Plaintiff and the tenants residing in the Property as described in paragraphs 26 through 29 hereof.

173. Plaintiff's family including his wife, and three minor children whose safety, security, normal routine and education will be disrupted by the loss of the right to continue to occupy Plaintiff's Property as their "home" pending the determination of whether Defendants are legally entitled to maintain the foreclosure against Plaintiff's Property and the pending unlawful detainer proceedings where they are faced with immediate eviction by the Sheriff of Clark County, Las Vegas, Nevada.

174. Defendants' wrongful act to continue its unlawful detainer to evict Plaintiff and

32

**VERIFIED COMPLAINT**

his family from his home unless and until enjoined and restrained by order of this court, will cause grave and irreparable injury to Plaintiff in that Plaintiff will be deprived of his home.

175.  Plaintiff has no adequate remedy at law for the threatened and continuing conduct in that it would be impossible for Plaintiff to determine the precise amount of damage Plaintiff will suffer if Defendants' conduct is not restrained.

176. Therefore, Plaintiff brings this cause of action for preliminary injunction against Defendants and each one of them, their agents, officers, employees, and affiliates or associated parties for their and their predecessors' actions in engaging in a pattern of unlawful, fraudulent, and unfair predatory real estate practices causing Plaintiff to become victim of such behavior and to be in jeopardy of losing his home through unlawful non-judicial foreclosure.

177. Plaintiff has a clear legal right to seek temporary and permanent injunctive relief as Plaintiff resides in the Property and has legal rights to his real property and as Defendants, without satisfying the necessary legal standing requirements to institute a foreclosure, are seeking, to take possession, custody, and control of Plaintiff's real property that is the subject of this litigation and ultimately remove the Plaintiff and his family from his real property.

178. Plaintiff has no adequate remedy at law to redress the harm complained of, and the sale of the Plaintiff's property, under the circumstances of record, is contrary to equity and good conscience in that such sale is being instituted by, Plaintiff alleges, upon information and belief, that Defendants who have no legal standing to institute or maintain the non-judicial foreclosure.

179. The specific facts set forth in this Complaint demonstrates that unless injunctive relief is granted against Defendants from removing Plaintiff from his Property during the pendency of this lawsuit, Plaintiff will suffer irreparable injury, loss, and damage of his real

33

**VERIFIED COMPLAINT**

property and eviction therefrom. The threatened injury to Plaintiff's property and personal rights cannot be compensated for by an ordinary damage award in that Plaintiff's real properties is unique.

180. Under the circumstances where the unlawful non-judicial foreclosure sale has occurred and Defendants seek in state court to illegally remove Plaintiff and his family from the Property, irreparable loss to Plaintiff has resulted and will continue if the Injunctive Relief requested herein is not granted immediately.

181. As Defendants, have no legal standing to institute or maintain a foreclosure of the Property, there is no harm to said Defendant with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm to the Plaintiff if the relief requested herein is not granted.

182. The granting of the relief requested herein is in the public interest, as the consuming public, including Plaintiff, will continue to be harmed by the illegal and unlawful conduct of the Defendants, if the relief requested herein is not granted.

183. Under the circumstances where there is no harm to Defendants, with the granting of the requested relief, no bond should be required as a prerequisite to the granting of the relief requested herein as there are no costs or other damages which could be contemplated on the part of Defendants with the granting of the requested relief for which a bond would otherwise be necessary.

### FIFTEENTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (Against All Defendants)

184. Plaintiff repleads, re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

185. Plaintiff contends that the foreclosure sale conducted by Defendants on

34

**VERIFIED COMPLAINT**

December 13, 2016 is invalid because as discussed herein no assignment was recorded to evidence an assignment of the rights and interest in the trust deed held on the Property by Country Wide Home Loans to BONY, that dual tracking occurred with Shellpoint and SLS, acting as servicers for BONY conducting a foreclosure sale when the loan modification process was ongoing, that BONY, Shellpoint, Sables and SLS acting in concert conspired to sell at auction the Property to Dundi after Shellpoint's representatives stated to Plaintiff and his loan modification representative on December 12, 2016 that no sale would occur on December 13, 2016 when in fact it did occur. For these reasons, dual tracking did occur and the Trustee's Deed Upon Sale recorded on December 30, 2016 is invalid, and defective.

186. Defendants, and each of them, on the other hand, maintain and contend that their foreclosure sale is valid and the Trustee's Deed is proper.

187. Plaintiff requests a judicial determination of the respective rights and duties of Plaintiff and Defendant with regard to the Property and specifically seeks that:

a. The Notice of Trustee's Sale recorded on November 21, 2016 is invalid;

b. The Trustee's Deed Upon Sale recorded on December 30, 2016 is invalid;

c. None of the Defendants named herein hold any right, title, estate, lien or interest in or to the Property or any part thereof.

188. Such a declaration is necessary and appropriate at this time in order that Plaintiff may determine his rights in the Property. Furthermore, a determination of the respective rights and liabilities of Plaintiff and Defendants is necessary to avoid a multiplicity of actions.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Bamba Fall prays for judgment against each Defendant, jointly and severally, as follows:

1.    For a Judicial Declaration that (a) the Notice of Trustee's Sale and Trustee's Deed Upon Sale is void and is vacated, and (b) that none of the Defendants named herein hold any right, title, estate, lien, or interest in or to the Property;

**VERIFIED COMPLAINT**

2.     For Judgment quieting Plaintiff's fee simple title to the Property and that Defendants have no right, title, interest in or to the real property, except as a Deed of Trust for the amount that is correctly deteremined following an accounting;

3.     For an order vacating the Trustee's Sale and invalidating the Trustee's Deed Upon Sale;

4.     For a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting Defendants from pursuing an unlawful detainer action in Clark County, Las Vegas Nevada or otherwise interfering with Plaintiff's interest in the Property pending resoluton of this action;

5.     For treble damages for violation of Nevada Homeowners' Bill of Rights;

6.     For special damages for forcing Plaintiff into bankruptcy in an amount to be determined at trial;

7.     For general damages in in a sum in excess of $1,000,000;

8.     For punitive and exemplary damages according to proof;

### AS TO ALL CAUSES OF ACTION

9.     For prejudgment interest at the maximum legal rate;

10.     For costs of suit incurred herein;

11.     For attorney fees as permitted by law;

12.     For such other and further relief as the Court deems just and proper.

DATED: January 31, 2014                    Respectfully submitted,

By: _____
BAMBA FALL
Plaintiff in Pro Per

36

**VERIFIED COMPLAINT**

## VERIFICATION

I, Bamba Fall, the undersigned, declare that I am the plaintiff in this action.  The matters stated in the attached complaint are true according to the best of my knowledge, except as to those matters which are stated on information and belief, and as to those matters,  I believe them to be true.  I have read the within document and know its contents.

I declare under the penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed this 131st day of January, 2017 at Encino, California.

BAMBA FALL

EXHIBIT "A"

20060906-0003945

SPACE B∖ ONLY

Fee: $16.00    RPTT: $1,846.20
N/C Fee:   $0.00

09/06/2006                15:18:15
T20060155028
Requestor:
    FIRST AMERICAN TITLE COMPANY OF NEVADA

Frances Deane          LEX
Clark County Recorder  Pgs: 4

Escrow No.:  112-2287063

R.P.T.T.$  1,846.20

APN:   191-04-310-064

WHEN RECORDED, MAIL TO SEND TAX STATEMENTS TO:

Bamba Fall

11852 Galvani Street

Las Vegas, NV 89123

# GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH: That KB HOME Nevada Inc., a Nevada corporation, for valuable consideration, the receipt of which is hereby acknowledged, does hereby Grant, Bargain, Sell and Convey to

Bamba Fall , A SINGLE MAN
all that real property situated in the City of Las Vegas, County of Clark, State of Nevada, bounded and described as follows (the "Property"):

FOR COMPLETE LEGAL DESCRIPTION, SEE ATTACHED EXHIBIT "A"

TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

RESERVING THEREFROM unto Grantor all water rights, permits, and certificates of Grantor of whatever kind or nature for ground water or surface water, and any and all other decrees, orders, or judgments affecting, adjudicating, or decreeing water rights to the end that this Deed shall not confer, grant, or transfer to Grantee any water rights whatsoever, or any claim to water or water rights.

AND FURTHER RESERVING unto Grantor all minerals owned by Grantor, and all geothermal energy sources in or under or which may be produced from the Property which lie below a plane parallel to and five hundred (500) feet below the surface of the Property, for the purpose of prospecting, exploration, development, production, or extraction of said substanes by means of mines, wells, derricks, and/or other equipment; provided, however, that Grantor shall have no right to enter the surface of the Property nor to use the Property above said plane parallel to and five hundred (500) feet below the surface of the Property.

SAID GRANT BEING FURTHER SUBJECT TO:

1.    General and special real property taxes for the current fiscal year not due or delinquent and any and all taxes and assessments levied or assessed after the recording date of this document. This will include the lien of supplemental taxes, if any.

2.    All assessments imposed by a duly empowered governmental entity, whether or not of record.

3.  Any and all covenants, conditions, restrictions, easements, reservations (including, but not limited to, reservations and exceptions to the mineral estate, including oil, gas or other hydrocarbon substances; arbitration of disputes; soils, grading and drainage disclosures; and any other disclosures specifically set forth in such documents), rights, and rights of way of record in the Office of the Clark County Recorder and any amendment(s), annexation(s) and/or supplement(s) thereto, including, any and all matters which an accurate survey or a physical inspection of the Property would disclose.

KB HOME Nevada Inc., a Nevada corporation

By: _____

Name: _____Michelle King_____

Its: _____Authorized Agent_____

Witness our hand this 2 day of September, 2006

STATE OF NEVADA      )
                     ) SS.
COUNTY OF CLARK      )

This instrument was acknowledged before me on _____9/2/06_____

by ____Michelle King_____ as Authorized Agent of KB HOME Nevada Inc., a

Nevada corporation.

_____
Notary Public

My commission expires: ___7/18/2007___

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
TINA FLOWERS
Appt. No. 03-83253-1
My Appt. Expires July 18, 2007

Form 1769
09/13/05

Page 2 of 2

**EXHIBIT 'A'**

Lot 185 of Terracina Phase 1, as shown by map thereof on file in Book 103 of Plats, Page 76, in the Office of the County Recorder of Clark County, Nevada.

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _LOS ANGELES_ } ss.

On _9-2-2006_ before me, _P.J. MORENO, NOTARY PUBLIC_
Date                Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared _BAMBA FELL_
Name(s) of Signer(s)

☐ personally known to me –
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

P. J. MORENO
Comm. No. 1434007
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. August 7, 2007

Signature of Notary Public

---

**OPTIONAL**

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _DEED OF TRUST_

Document Date: _9-1-2006_      Number of Pages: _16_

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer

Signer's Name: _____

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

**STATE OF NEVADA**
**DECLARATION OF VALUE**

1.  Assessor Parcel Number(s)

    a)  191-04-310-064

    b)_____

    c)_____

    d)_____

| FOR RECORDERS USE ONLY |
|---|
| Document/Instrument # _____ |
| Book _____ Page _____ |
| Date of Recording: _____ |
| Notes: _____ |

2.  Type of Property:

    b)    Single Family Res.

3.  Total Value/Sales Price of Property:        $361,703.00

    Deed in Lieu of Foreclosure Only (value of property)    ($_____)

    Transfer Tax Value        $361,703.00

    Real Property Transfer Tax Due        $1,846.20

4.  **If Exemption Claimed:**

    a.  Transfer Tax Exemption, per 375.090, Section:    _____

    b.  Explain reason for exemption:

5.  Partial Interest: Percentage being transferred:        100  %

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein.  Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month.  Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature: _____    Capacity:  Buyer

Signature: _____    Capacity:  Seller

SELLER (GRANTOR) INFORMATION        BUYER (GRANTEE) INFORMATION
REQUIRED        REQUIRED

Print Name:  KB HOME Nevada Inc., a Nevada Corporation        Print Name:  Bamba Fall

Address:  5655 W. Badura        Address:  11852 Galvani Street

City/State/Zip:  Las Vegas, NV 89118        City/State/Zip:  Las Vegas, NV 89123

COMPANY/PERSON REQUESTING RECORDING (REQUIRED IF NOT SELLER OR BUYER)

PRINT NAME:  First American Title Company of Nevada        File #: 112-2287063 JB/TAF

ADDRESS:  205 E. Warm Springs, Ste. 105

CITY:  Las Vegas        STATE:  Nevada    ZIP:  89119

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)

Reproduced by First American Title Company 11/2001

EXHIBIT "B"

20060906-0003946

Assessor's Parcel Number: 191-04-310-064

After Recording Return To:

MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423
Prepared By:
MILTON JOHNSON
~~Recording Requested By:~~
M. BOUGHEY

Countrywide KB Home Loans, a
Countrywide Mortgage
Ventures, LLC series
7105 Corporate Dr., Bldg C,
Ste 200
Plano
TX 75024

Fee: $38.00
N/C Fee:  $0.00

09/06/2006          15:18:15
T20060155028

Requestor:
  FIRST AMERICAN TITLE COMPANY OF NEVADA

Frances Deane          LEX
Clark County Recorder   Pgs: 25

————————————[Space Above This Line For Recording Data]————————————

112-2287063-JB

00014472264809006
[Doc ID #]

# DEED OF TRUST

MIN  1000157-0007193785-4

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

**NEVADA**-Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

VMP -6A(NV) (0507)  CHL (11/05)(d)

VMP Mortgage Solutions, Inc.

Form 3029  1/01





DOC ID #: 0001447226480906

**(A) "Security Instrument"** means this document, which is dated SEPTEMBER 01, 2006 , together with all Riders to this document.

**(B) "Borrower"** is

BAMBA FALL , A SINGLE MAN

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is

Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series

Lender is a

LIMITED LIABILITY CORPORATION

organized and existing under the laws of DELAWARE                                    . Lender's address is

27001 Agoura Road, Suite 200
Calabasas Hills, CA 91301

**(D) "Trustee"** is

RECONTRUST COMPANY, N.A.

225 WEST HILLCREST DRIVE, MSN TO-02
THOUSAND OAKS, CA 91360

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated SEPTEMBER 01, 2006 .
The Note states that Borrower owes Lender

TWO HUNDRED EIGHTY NINE THOUSAND THREE HUNDRED SIXTY TWO and 00/100

Dollars (U.S. $ 289,362.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than SEPTEMBER 01, 2036 .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

VMP -6A(NV) (0507)   CHL (11/05)          Page 2 of 16                    Form 3029  1/01

DOC ID #: 0001447226480006

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower

DOC ID #: 00014472264809006

irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the  COUNTY

[Type of Recording Jurisdiction]

CLARK                                                                    :

[Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

11852 GALVANI ST, LAS VEGAS

[Street/City]

Nevada  89123-5530  ("Property Address"):

[Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(NV) (0507)  CHL (11/05)          Page 4 of 16                    Form 3029  1/01

DOC ID #: 00014472264809006

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums

DOC ID #: 0001447226480906

any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or

DOC ID #: 00014472264809006

defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be

DOC ID #: 0001447226480 9006

paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on
such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of
the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not
economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the
sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.
Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim
and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance
carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will
begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or
otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount
not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's
rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies
covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use
the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this
Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence
within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as
Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise
agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist
which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not
destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.
Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent
the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to
Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if
damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in
connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or
restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds
for the repairs and restoration in a single payment or in a series of progress payments as the work is
completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property,
Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has
reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give
Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process,
Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or
consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to
provide Lender with material information) in connection with the Loan. Material representations include, but
are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal
residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a)
Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a
legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this
Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for
enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or
regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

DOC ID #: 00014472264809006

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive

DOC ID #: 0001447226480906

from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

DOC ID #: 0001447226480906

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

DOC ID #: 0001447226480906

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,

DOC ID #: 0001447226480006

property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

DOC ID #: 0001447226480900

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 300.00

-6A(NV) (0507)    CHL (11/05)        Page 14 of 16                    Form 3029 1/01

DOC ID #: 00014472264809006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BAMBA FALL                                                    -Borrower

_____ (Seal)
                                                             -Borrower

_____ (Seal)
                                                             -Borrower

_____ (Seal)
                                                             -Borrower

VMP -6A(NV) (0507)    CHL (11/05)       Page 15 of 16                      Form 3029  1/01

## EXHIBIT 'A'

**Lot 185 of Terracina Phase 1, as shown by map thereof on file in Book 103 of Plats, Page 76, in the Office of the County Recorder of Clark County, Nevada.**

LOAN #: 144722648

# INTEREST ONLY ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS INTEREST ONLY ADJUSTABLE RATE RIDER is made this FIRST day of SEPTEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
11852 GALVANI ST, LAS VEGAS, NV 89123-5530
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**MULTISTATE INTEREST ONLY ADJUSTABLE RATE RIDER - LIBOR INDEX**
● BC - Interest Only ARM Rider
1E120-US (05/06)(d)                           Page 1 of 4





LOAN #: 144722648

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 8.125 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of SEPTEMBER, 2011 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding NINE & FIVE-EIGHTHS percentage point(s) ( 9.625 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 8.125 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.125 % or less than 8.125 %.

LOAN #: 144722648

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both Principal and interest on the Note (the "First Principal and Interest Payment Due Date") will be the first monthly payment date after the one hundred twentieth (120th) scheduled monthly payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

● BC - Interest Only ARM Rider
1E120-US (05/06)                         Page 3 of 4

LOAN #: 144722648

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

_____
BAMBA FALL                                        - Borrower

_____
                                                  - Borrower

_____
                                                  - Borrower

_____
                                                  - Borrower

● BC - Interest Only ARM Rider
1E120-US (05/06)                    Page 4 of 4

DOC ID #: 00014472264809006

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this FIRST                day of SEPTEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

11852 GALVANI ST
LAS VEGAS, NV 89123-5530

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
TERRACINA

[Name of Planned Unit Development]

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
-7R (0411)        CHL (12/05)(d)            Page 1 of 3
VMP Mortgage Solutions, Inc.                          **Form 3150  1/01**



DOC ID #: 0001447226480906

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

-7R (0411)          CHL (12/05)          Page 2 of 3          Form 3150  1/01

DOC ID #: 0001447226480906

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
                                                 - Borrower
BAMBA FALL

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

_____ (Seal)
                                                 - Borrower

VMP®-7R (0411)        CHL (12/05)        Page 3 of 3        Form 3150 1/01

*P CALIFORNIA*

DOC ID #: 00014472264809006

STATE OF ~~NEVADA~~
COUNTY OF *LOS ANGELES*

*P.J. MORENO, NOTARY PUBLIC*

This instrument was acknowledged before me on *BAMBA FALL 9-2-2006* by

*BAMBA FALL*

Mail Tax Statements To:
BAMBA FALL

11852 GALVANI ST
LAS VEGAS, NV 89123

P. J. MORENO
Comm. No. 1434007
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. August 7, 2007

**RECORDER'S MEMO**
POSSIBLE POOR RECORD DUE TO
QUALITY OF ORIGINAL DOCUMENT

VMP®  -6A(NV) (0507)    CHL (11/05)    Page 16 of 16    **Form 3029  1/01**

Inst#:200910050001143 Fee: $15.00 N/C Fee:$0.00  10/05/2009  9:11:18 AM
Receipt#:81882 Requestor    ELITY NATIONAL DEFAULT SOLUTION  Recorded By:ARO
Pgs:2 DEBBIE CONWAY CLARK COUNTY RECORDER

RECORDING REQUESTED BY:
RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT TO:**
RECONTRUST COMPANY
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082

**ATTN: Alicia Bardere**
**TS No.  09-0143908**

**TSG No. 090681654NVGTI**

191 04 310 064

### SUBSTITUTION OF TRUSTEE NEVADA

WHEREAS, BAMBA FALL, A SINGLE MAN was the original Trustor, RECONTRUST COMPANY, N.A. was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 09/01/2006 recorded on 09/06/2006 as Instrument No. 0003946 in Book 20060906 Page N/A of Official Records of Clark County, Nevada;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 2380 Performance Dr, TX2-985-07-03, Richardson, TX  75082, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED: 09/28/2009

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006- 17 BY BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP AS AIF

BY: _____

Angela Nava , Assistant Secretary

State of: _____ Texas _____ )
County of: _____ Dallas _____ )

On OCT 0 1 2009 before me Christopher A. Williams _____, personally appeared Angela Nava    Assistant Secretary _____, know to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Witness my hand and official seal.

_____
Notary Public's Signature

CHRISTOPHER A. WILLIAMS
My Commission Expires
June 20, 2012

EXHIBIT "C"

APN: 191-04-310-064

RECORDING REQUESTED BY:
Sables, LLC

AND WHEN RECORDED MAIL TO:
Sables, LLC
c/o Law Office of Les Zieve
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

Inst #: 20140703-0002110
Fees: $18.00
N/C Fee: $0.00
07/03/2014 02:39:48 PM
Receipt #: 2078292
Requestor:
LSI TITLE AGENCY INC.
Recorded By: ECM    Pgs: 2
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

14011096 2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 14-28748
The undersigned hereby affirms that there is no Social Security number contained in this document.

## SUBSTITUTION OF TRUSTEE

WHEREAS, BAMBA FALL, A SINGLE MAN was the original Trustor, RECONTRUST COMPANY, N.A. was the original Trustee, and COUNTRYWIDE KB HOME LOANS, A COUNTRYWIDE MORTGAGE VENTURES, LLC SERIES as Lender, Mortgage Electronic Registration Systems, Inc. was the original Beneficiary under that certain Deed of Trust dated 9/1/2006 and recorded on 9/6/2006 as Instrument No. 0003946, in book 20060906, page of Official Records of Clark County, Nevada; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes Sables, a Nevada limited liability company, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: 6/26/2014

The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17
By: Specialized Loan Servicing, LLC, its attorney in fact

Hunter Robinson          Vice President

TS No.: **14-28748**

## SUBSTITUTION OF TRUSTEE

State of ___**Colorado**___

County of ___**Douglas**___

On ___6/26/14___ before me, ___Dedra Kay Dee___ Notary Public, personally appeared ___**Hunter Robinson**___ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___**Colorado**___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

```
DEDRA KAY DEE
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144004254
My Commission Expires January 30, 2018
```

Substitution of trustee: Fall, Bamba

EXHIBIT "D"

APN: 191-04-310-064

WHEN RECORDED MAIL TO:
Sables, LLC
c/o Law Offices of Les Zieve
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

Inst #: 20151229-0003254
Fees: $225.00
N/C Fee: $25.00
12/29/2015 02:52:12 PM
Receipt #: 2646041
Requestor:
SERVICELINK TITLE AGENCY IN
Recorded By: OSA  Pgs: 9
**DEBBIE CONWAY**
CLARK COUNTY RECORDER

---

TS No. : 14-28748

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO SELL THE REAL PROPERTY UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five (5) business day prior to the date set for the sale of your property pursuant to NRS 107.080. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice). This amount is **$266,760.79** as of **12/24/2015** and will increase until your account becomes current.

**NOTICE IS HEREBY GIVEN THAT: SABLES, LLC, a Nevada limited liability company** is either the original trustee, or the duly appointed substituted Trustee, or acting as agent for the Trustee or the Beneficiary under a under a Deed of Trust dated 9/1/2006, executed by **BAMBA FALL, A SINGLE MAN**, as trustor to secure obligations in favor of **COUNTRYWIDE KB HOME LOANS, A COUNTRYWIDE MORTGAGE VENTURES, LLC SERIES as Lender, Mortgage Electronic Registration Systems, Inc.,** as Beneficiary, recorded 9/6/2006, instrument no. 0003946, in book 20060906, page , of Official Records in the office of the County recorder of **Clark**, County, **Nevada** securing, among other obligations including

One note(s) for the Original sum of **$289,362.00**, that the beneficial interest under such Deed of Trust and the obligations secured hereby are presently held by Beneficiary; that a breach of and default in the obligations for which such Deed of Trust is security has occurred or that payment has not been made of:

**The monthly installment which became due on 9/1/2007, along with late charges, and all subsequent monthly installments.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to; foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

T.S. No.: 14-28748

**Nothing in this Notice of Default should be construed as a waiver of any fees owing to the beneficiary under the Deed of Trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof the present Beneficiary under such deed of Trust has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described.  Section NRS 107.080 permits certain defaults to be cured upon the Payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred.  As to owner occupied property, where reinstatement is possible, the time to reinstate may be extended to 5 days prior to the date of sale pursuant to NRS 107.080.  The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact:**

The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17
c/o Specialized Loan Servicing LLC
c/o SABLES, LLC, a Nevada limited liability company
3753 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Beneficiary Phone: (800)315-4757
Trustee Phone: (702) 664-1774

To reach a person with authority to negotiate a loan modification on behalf of the lender:

Michelle (Teller ID: 11088)
1-800-306-6059

Property Address:  **11852 GALVANI ST, LAS VEGAS, NV 89123-5530**

If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.
**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Attached hereto and incorporated herein by reference is the Affidavit of Authority in Support of Notice of Default and Election to Sell pursuant to NRS 107.080.

You may wish to consult a credit counseling agency to assist you.  The Department of Housing and Urban Development (HUD) can provide you with names and addresses of local HUD approved

T.S. No.: 14-28748

counseling agency by calling their approved Local Housing Counseling Agency toll free number: (800) 569-4287 or you can go to HUD's website: http://portal.hud.gov.

Dated: 12/24/2015

SABLES, LLC, a Nevada limited liability company, as Trustee
Sables, LLC
c/o Law Offices of Les Zieve
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
(702) 948-8565

Patricia Sanchez, Trustee Sale Officer

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA
County of ORANGE

On 12/24/2015, before me, Christine O'Brien, personally appeared Patricia Sanchez who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature of Notary

CHRISTINE O'BRIEN
Commission # 1986128
Notary Public - California
Orange County
My Comm. Expires Aug 21, 2016

5428|8658

## NEVADA DECLARATION OF COMPLIANCE
### NV SB 321 (2013) Sec. 11

Borrower(s): BAMBA FALL
Property Address: 11852 GALVANI ST, LAS VEGAS, NV 89123
Trustee Sale Number: 14-28748

The undersigned, as authorized agent or employee of the mortgage servicer named below, declares:

That this Declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower(s)' loan status and loan information.

1.   [     ] The mortgage servicer has contacted the borrower(s) to assess the borrower(s)' financial situation, provide the toll free number to enable the borrower(s) to find a housing counselor certified by HUD, and explore options for the borrower(s) to avoid foreclosure as required by SB 321 (2013) Sec. 11(2). Initial contact was made on _____, 201___; or

2.   [ X ] The mortgage servicer has tried with due diligence to contact the borrower(s) as required by SB 321 (2013) Sec. 11(5), but has not made contact despite such due diligence. The due diligence efforts were satisfied on ___June 24_____, 201 5 ; or

3.   [     ] The mortgage servicer has tried with due diligence to contact the borrower(s) as required by NRS 107.510(5)(a) and NRS 107.510(5)(c)-(e), but has not made contact despite such due diligence. The telephone contact requirements under NRS 107.510(5)(b) were not attempted pursuant to the borrower's previously submitted written cease communication request. The due diligence efforts were satisfied on _____, 201___; or

4.   The requirements of SB 321 (2013) Sec. 11 do not apply, because:

     a.   [     ] The mortgage servicer is exempt pursuant to SB 321 (2013) Sec. 7.5 by virtue of being a financial institution as defined in NRS 660.045 that has foreclosed on 100 or fewer owner-occupied real properties (as defined in NRS 107.086) in Nevada in its last annual reporting period.

     b.   [     ] The individual(s) do not meet the definition of a "borrower" as set forth in SB 321 (2013) Sec. 3.

     c.   [     ] The loan underlying the security interest that is the subject of this foreclosure is not a "residential mortgage loan" (as defined in SB 321 (2013) Sec. 7) which is

primarily for personal, family or household use and which is secured by a mortgage or deed of trust on owner-occupied housing (as defined in NRS 107.086).

d. [ ] The mortgage servicer is a signatory to a consent judgment filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, as set forth in SB 321 (2013) Sec. 16, and is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower(s) while the consent judgment is in effect.

In light of the foregoing, the mortgage servicer authorizes the trustee to submit the attached Notice of Default to be recorded, and to exercise the power of sale, as all pre-foreclosures notices required by NRS 107.080(2)(c)(3) and SB 321 (2013) Sec. 10(1) were timely sent per statute and (if applicable and the mortgage servicer is not otherwise exempt from said requirements) the mortgage servicer has complied with the requirements set forth in SB 321 (2013) Secs. 12 & 13 regarding the acceptance and processing of foreclosure prevention alternative applications.

Specialized Loan Servicing LLC as servicer for The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17

Dated: **JUL 0 2 2015**

_____
Signature of Agent or Employee

**Ami McKernan**        Second Assistant Vice President
_____
Printed Name of Agent or Employee

Trustee Sale Number: 14-28748

*14-28748*

### Affidavit of Authority
(Nevada Revised Statue § 107.080 as amended effective June 1, 2013)

Re:     Borrowers Name: BAMBA FALL
        Property Address: 11852 GALVANI ST, LAS VEGAS, NV 89123-5530

I, _____**Ami McKernan**_____, am a(n) ___Second Assistant Vice President___ of **Specialized Loan Servicing LLC ("SLS"),** the current loan servicing agent ("Servicer" for the current Beneficiary of the Deed of Trust described in the Notice of Default and Election to Sell to which this affidavit is attached.

SLS maintains records for the Beneficiary in its capacity as Servicer. As part of my job responsibilities for SLS, I am familiar with the type of records maintained by SLS. The information in this affidavit is taken from SLS's business records. I have personal knowledge of SLS's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of SLS's regularly conducted business activities; and (c) it is the regular practice of SLS to make such records.

1.  The following facts are based upon my personal review of documents that are of Official Records in the State of Nevada and/or my own personal knowledge that has been acquired by my personal review of the business records of SLS.

        1(a). The full name and business address of the current Trustee of record for the Deed of Trust is: **Sables LLC, a Nevada limited liability company, 3753 Howard Hughes Parkway, Suite 200, Las Vegas, Nevada 89169**

1(b).   The full name and business address of the current holder of the Note secured by the Deed of Trust is: **The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17, C/O Specialized Loan Servicing, LLC, 8742 Lucent Blvd., Ste. 300, Highlands Ranch, CO 80129**

1(c).   The full name and business address of the current Beneficiary for the obligation or debt secured by the Deed of Trust is: **The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17, C/O Specialized**

**Loan Servicing, LLC, 8742 Lucent Blvd., Ste. 300, Highlands Ranch, CO 80129**

1(d).     The full name and business address of the current Servicer for the obligation or debt secured by the Deed of Trust is: **Specialized Loan Servicing LLC, 8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129**

2.     From my review of the documents that are of Official Records in the State of Nevada and/or the business records of SLS and a Title Guaranty or Title Insurance Policy issued by a Title Insurer or Title Agent authorized to do business in the State of Nevada pursuant to Chapter 629A of the NRS, the name of each assignee and each recorded assignment of the Deed of Trust is:

2(a).     Assignee Name: **The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17**
Instrument and Recording Information: **Corporation Assignment of Deed of Trust Nevada recorded on 10/05/2009 as instrument # 200910050001142.**

3. The current Beneficiary under the Deed of Trust, the successor in interest to the Beneficiary or the current Trustee is in actual or constructive possession of the Note secured by the Deed of Trust.

4. From my review of the documents that are of Official Records in the State of Nevada and/or the business records of SLS, the current Trustee has authority to exercise the power of sale with respect to the property encumbered by the Deed of Trust, pursuant to instruction from the current Beneficiary of record and current holder of the Note secured by the Deed of Trust.

5. From my review of the documents that are of Official Records in the State of Nevada and/or the business records of SLS, the Beneficiary, Servicer of the obligation, or an attorney representing the Beneficiary or Servicer has sent to BAMBA FALL a written statement of: (I) the amount of payment required to make good the deficiency in performance of payment, avoid the exercise of the power of sale and reinstate the terms and conditions of the underlying obligation or debt existing before the deficiency in performance or payment, as of the date of the statement; (II) the amount in default; (III) the principal amount of the obligation or debt secured by the deed of trust; (IV) the amount of accrued interest and late charges; (V) a  good faith estimate of all fees imposed in connection with the power of sale; and (VI) contact information

for obtaining the most current amounts due and the local or toll-free telephone numbers that BAMBA FALL may call to receive the most current amounts due and recitation of the information in this affidavit.

6. The Borrower or Obligor of the loan secured by the Deed of Trust may call Specialized Loan Servicing LLC at 1-800-315-4757 to receive the most current amounts due and recitation of the information contained in this affidavit.

I declare under penalty of perjury of the laws of the State of Colorado that the foregoing is true and correct and that this affidavit was executed on _____ **OCT 3 0 2015** _____.

**The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17 By: Specialized Loan Servicing LLC, its attorney in fact**

By: _____

Name: _____ Ami McKernan _____

Its: _____ Second Assistant Vice President _____

State of **Colorado**
County of **Douglas**

The foregoing instrument was acknowledged before me this _____ by _____ of Specialized Loan Servicing LLC, a Delaware Limited Liability Company, on behalf of the LLC.

_____
(Notary's Official Signature)                    *See Attached.*

_____
(Commission Expiration)

AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE
Page 3 of 3

TS# 14-28748

## COLORADO NOTARIAL JURAT

STATE OF COLORADO    )

COUNTY OF DOUGLAS    )

Subscribed and sworn before me in the County of Douglas, State of Colorado this
**OCT 3 0 2015** _____ by ____ **Ami McKernan** ___ Second Assistant Vice President ___ .

(Date)                                    (Name)

_Jordan Scott Lassley_
Notary's Official Signature

_July 15 2019_
Commission Expiration

JORDAN SCOTT LASSLEY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20114045016
MY COMMISSION EXPIRES 07/19/2019

| Description of document this notarial certificate is being attached to: | |
|---|---|
| Type / Title of Document: | affidavit of authority |
| Date of Document: | OCT 3 0 2015 |
| Number of Pages: | 3 |
| Additional Signers (other than those named in notarial certificate) | N/A |

Note: This is a jurat format notarial certificate. This document as well as the document it is attached to cannot contain any blank lines. Please ensure all blanks are filled in prior to notarization.

_Bamba Fall_

EXHIBIT "E"

EXHIBIT "F"

A.P.N.: 191-04-310-064

RECORDING REQUESTED BY:
SABLES, LLC, a Nevada limited Liability Company

AND WHEN RECORDED TO:
Dundi Investments LLC
2050 Warm Springs Rd #1024
Henderson, NV 89104

Forward Tax Statements to
the address given above

2016 9914 Lm

_____

SPACE ABOVE LINE FOR RECORDER'S USE

Inst #: 20161230-0003649
Fees: $18.00 N/C Fee: $25.00
RPTT: $1190.85 Ex: #
12/30/2016 03:22:21 PM
Receipt #: 2971620
Requestor:
NATIONAL TITLE COMPANY
Recorded By: MAYSM  Pgs: 3
**DEBBIE CONWAY**
**CLARK COUNTY RECORDER**

T.S. # 14-28748
Order #: 140110962-NV-MSI

## TRUSTEE'S DEED UPON SALE

Transfer Tax: $0.00
The Grantee Herein **WAS NOT** the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was $547,295.65
The Amount Paid by the Grantee was $233,100.00
Said Property is in the City of **LAS VEGAS**, County of Clark

**SABLES, LLC, a Nevada limited liability company**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## Dundi Investments LLC

(herein called Grantee) but without covenant or warranty, expressed or implied, all rights, title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Clark**, State of Nevada, described as follows:

**LOT 185 OF TERRACINA PHASE 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 103 OF PLATS, PAGE 76, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.**
11852 GALVANI ST
LAS VEGAS, NV 89123-5530
AKA 11852 GALVANI ST
LAS VEGAS, NV 89183-5530

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **BAMBA FALL, A SINGLE MAN** as Trustor, dated 9/1/2006 of the Official Records in the office of the Recorder of **Clark**, Nevada under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on  9/6/2006, instrument number 0003946 Book 20060906, Page  of official records.

## TRUSTEE'S DEED UPON SALE

T.S. #: 14-28748
Order #: 140110962-NV-MSI

Trustee having complied with all applicable statutory requirements of the State of Nevada and performed all duties required by the Deed of Trust including sending a Notice of Breach and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified return receipt mail, postage pre-paid to each person entitled to notice in compliance with Nevada Civil Code 107.050.

All requirements per Nevada Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 12/14/2016. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being $ **$233,100.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, SABLES, LLC, a Nevada limited liability company, as Trustee, has this day, caused its name to be hereunto affixed.

Date: 12/22/2016

SABLES, LLC, a Nevada limited liability company

_____
Dalaysia Ramirez, Trustee Sale Officer

DALAYSIA RAMIREZ,
TRUSTEE SALE OFFICER

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA
County of ORANGE

On **12/22/2016** before me, the undersigned, **Ashley Walker** Notary Public, personally appeared **Dalaysia Ramirez** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Ashley Walker

ASHLEY WALKER
Notary Public - California
Orange County
Commission # 2167066
My Comm. Expires Oct 8, 2020

STATE OF NEVADA
DECLARATION OF VALUE FORM

1. Assessor Parcel Number(s)
   a) __191-04-310-064__
   b)_____
   c)_____
   d)_____

2. Type of Property:
   a) ☐ Vacant Land      b) ☑ Single Fam. Res.
   c) ☐ Condo/Twnhse     d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg        f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural  h) ☐ Mo ☐ Home    Notes:
   ☐ Other_____

   ┌─────────────────────────────────────┐
   │ FOR RECORDER'S OPTIONAL USE ONLY     │
   │  Book:_____ Page_____   │
   │  Date of Recording:_____  │
   └─────────────────────────────────────┘

3. a. Total Value/Sales Price of Property        $_$233,100.00_____
   b. Deed in Lieu of Foreclosure Only (value of property)  (_____)
   c. Transfer Tax Value:                        $__$233,100.00
   d. Real Property Transfer Tax Due             $_1,190.85

4. **If Exemption Claimed:**
   a. Transfer Tax Exemption per NRS 375.090, Section _____
   b. Explain Reason for Exemption:_____

5. Partial Interest: Percentage being transferred: __100 %
        The undersigned declares and acknowledges, under penalty of perjury, pursuant to
   NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief,
   and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore,
   the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may
   result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and
   Seller shall be jointly and severally liable for any additional amount owed.

   Signature_____  Capacity ~~AGENT~~ agent_____

   Signature_____  Capacity AGENT_____

   **SELLER (GRANTOR) INFORMATION**          **BUYER (GRANTEE) INFORMATION**
         **(REQUIRED)**                            **(REQUIRED)**
   Print Name: Sables, LLC                  Print Name: Dundi Investments LLC
   Address: 3753 Howard Hughes Parkway, Suite   Address: 2050 Warm Springs Rd #1024
   200, Las Vegas, NV 89169                 Henderson , NV 89104
                                            (702) 595-7117

   **COMPANY/PERSON REQUESTING RECORDING (required if not seller or buyer)**
   Print Name: National Title CO.      Escrow #: 201 69914 Lm
   Address: 8915 S. Pecos Rd #20A
   City: Henderson                     State: NV    Zip: 89074

        **AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED**

EXHIBIT "G"

JUSTICE COURT, LAS VEGAS TOWNSHIP

CLARK COUNTY, NEVADA

FILED
01/13/2017

JUSTICE COURT
LAS VEGAS NEVADA

MH

|  |  |
|---|---|
| Dundi Investments LLC, Landlord(s)<br>vs.<br>Bamba Fall, Tenant(s) | CASE NO.:    17E000625<br>JC Civil Evictions |

**ORDER FOR
SUMMARY EVICTION**

The Court being fully advised and finding good cause therefore, it is hereby ORDERED, ADJUDGED AND DECREED that the Constable/Sheriff, within twenty-four (24) hours after receipt of this Order, is hereby authorized to enter, using all necessary force as may be required, upon the premises known generally as:

## 11852 Galvani St
## Las Vegas, NV 89183

Located in Las Vegas Township, Clark County, Nevada, and to summarily remove the Defendant/Tenant from the property, and Plaintiff/Landlord is hereby awarded the right of possession of the premises.

THIS ORDER WILL EXPIRE 30 CALENDAR DAYS AFTER SIGNED BY THE COURT.

13th day of January, 2017

DATE

HEARING MASTER
DAVID BROWN

If this Order is not enforced within the applicable time period, a new Eviction Order must be obtained before the tenant(s) can be locked out.

**Constable's Use Only:**

ALL OCCUPANTS: YOU AND ALL OF YOU ARE HEREBY ORDERED TO VACATE THIS PROPERTY AFTER RECEIPT OF THIS ORDER. THE CONSTABLE OF LAS VEGAS TOWNSHIP WILL RETURN TO THE PREMISES AND REMOVE YOU AND ALL OF YOU TO THE STREET PURSUANT TO THIS ORDER.

TENANT MUST REMOVE ANY AND ALL BELONGINGS PRIOR TO THE EVICTION DATE AND TIME.

**NOTICE**

Any animal left unsupervised will be impounded.
Animal Foundation
700 N Mojave Rd.    (702) 384-3333

EVICTION WILL TAKE PLACE ON:

JAN 1 9 2017

THIS IS          URS

LVJC-01 Rev. 9/1



F. OLIGE P#9576

17E000625
OSEOH
Order for Summary          Hearing Mast
7506392